697 S.E.2d 53

**In the Interest of JESSICA G.**

**No. 35487.**

Supreme Court of Appeals of West Virginia.

Submitted May 4, 2010.

Decided June 3, 2010.

Concurring Opinion of Justice Workman June 24, 2010.

---

Mark Hobbs, Esq., Chapmanville, WV, for Appellant, Morris G.

Erica Barker Cook, Esq., Partain Law Office, Logan, WV, Guardian ad litem for the Minor Child, Jessica G.

Darrell V. McGraw, Jr., Attorney General, Charleston, WV, Michael L. Jackson, Esq., Assistant Attorney General, Charleston, WV, for Appellee, West Virginia Department of Health and Human Resources.

PER CURIAM:

Morris G.,[1] hereafter "Appellant" or "father," appeals an order of the Circuit Court of Logan County which terminated his parental rights to the minor child, Jessica G., and transferred physical and legal custody of Jessica G. to the West Virginia Department of Health and Human Services, hereafter "DHHR." The Appellant argues that the circuit court failed to properly consider the wishes of his then thirteen-year-old daughter, Jessica G., before terminating his parental rights. In a brief filed with this Court, the guardian *ad litem* for Jessica G. also assigns as error that the circuit court failed to make "findings of fact as to whether it considered the wishes of Jessica G., age thirteen, regarding the permanent termination of the parental rights of the Appellant as required by West Virginia Code 49–6–5(a)(6) and if so, why such wishes were ignored."

Having fully considered the record, arguments and briefs of the parties, we vacate the circuit court's order terminating the Appellant's parental rights and remand this matter for further proceedings consistent with this Opinion.

## I. Factual Background

The Appellant is the biological father of Jessica G. and has a long history of addiction to prescription medications. The record shows that on August 10, 2007, an abuse and

neglect proceeding was instituted against the Appellant and Jessica G.'s biological mother, Kelly G., alleging substance abuse and neglect of Jessica G. The circuit court, upon receipt of the petition, granted DHHR temporary custody of Jessica G. In a subsequent hearing, the Appellant was granted a pre-adjudicatory improvement period, which he successfully completed and custody of Jessica G. was returned to the Appellant.

On April 7, 2008, the DHHR received another referral, again alleging substance abuse by the Appellant. An investigation into that referral found the Appellant to be taking his medication as prescribed, but that Kelly G. admitted to extensive substance abuse. However, an abuse and neglect petition was not filed because Kelly G. had moved out of the Appellant's home, the Appellant had full custody of Jessica G. and the Appellant informed DHHR that he was divorcing Kelly G.

On July 2, 2008, DHHR received another referral, this time informing DHHR that the Appellant had overdosed on benzodiapines and opiates, necessitating his hospitalization in intensive care and placement on a ventilator. DHHR filed an abuse and neglect petition and sought immediate custody of Jessica G., which the circuit court granted.

In his Answer to DHHR's abuse and neglect petition, the Appellant admitted to the allegations that his substance abuse had resulted in the neglect of Jessica G., and moved for a post-adjudicatory improvement period. The record shows that over the course of the next several months, the circuit court and DHHR made substantial efforts to provide the Appellant with opportunities to treat his addiction to prescription medications.[2] These efforts ultimately proved unsuccessful, and DHHR moved to terminate the Appellant's and Kelly G.'s[3] parental and custodial rights.

---

1. We follow our traditional practice in child abuse and neglect matters, as well as other cases involving sensitive facts, and do not use the last names of the parties. *See, e.g., In the Matter of Scottie D.*, 185 W.Va. 191, 192 n. 1, 406 S.E.2d 214, 215 n. 1 (1991).

2. The record reflects that the Appellant had been seriously injured in an accident and began taking pain medications, leading to his addiction.

At the time of the institution of the abuse and neglect proceeding underlying this appeal, the Appellant continued to be prescribed pain medication and was under the care of a pain management specialist.

3. The record indicates that Kelly G. had been largely uncooperative during the post-adjudicatory improvement period granted to her, including

On June 5, 2009, a hearing was held on DHHR's motion, at which time neither the Appellant, nor Kelly G., appeared. The only witness who testified at the hearing was a social worker employed by DHHR. The social worker testified that while the Appellant had successfully completed an inpatient treatment program early in the proceedings, he failed to follow through with his treatment plan which required the Appellant to enroll in a post-discharge addiction treatment program.

The social worker also testified to Jessica G.'s statements regarding termination of the Appellant's parental rights, stating: "I would note that the child is thirteen and does not wish her father's parental rights to be terminated" and that there "is a very strong bond between Jessica and her father" and that if the Appellant's rights were terminated as requested, that she "would want them [Jessica G. and the Appellant] to be able to have some sort of contact, just because there is such a significant bond." Notwithstanding the "significant bond" between Jessica G. and her father, the social worker testified that she did "not think it would be appropriate for [the Appellant] to regain custody of Jessica."

Following the social worker's testimony, and argument of counsel for the parties, the circuit court granted DHHR's motion to terminate the Appellant's parental rights.[4] In terminating the Appellant's parental rights, the circuit court made the following findings from the bench:

> ... [in] Jessica's best interest we all have hoped that Kelly and Morris would deal with their substance abuse issues. Early on it was recognized and recommended that they avail themselves voluntarily of inpatient treatment programs to help them get clean so that we could work keeping them clean so that they could properly parent their teenage daughter.
>
> The [DHHR] did not object to post-adjudicatory improvement period for either parent. However, the parents have failed to respond or follow through with recommended treatment which would have improved their capacity for parenting. They have willfully refused and are presently unwilling to cooperate in the development of a reasonable family case plan to lead to the child's return to their care, custody, and control.
>
> We have had [treatment plans] and formulated preliminary plans to let them rehabilitate themselves but they again have refused and are presently unwilling to cooperate. Their attendance at hearings has been sporadic. They have not followed through with their drug screens as they promised that they would do which can only lead to the conclusion that they are continuing to use drugs. There is no doubt that each of them loves their daughter and that their daughter loves them; and that their daughter yearns for them to clean up their act so that they can be a family unit.
>
> However, the Court finds by clear and convincing evidence in this case that there is no reasonable likelihood that the conditions of Morris and Kelly being addicted to controlled substances can be substantially corrected; and therefore, the Court grants the petition to [t]erminate both the parental and custodial rights of each of the biological parents.

After terminating the Appellant's parental and custodial rights, the circuit court did note the testimony that established the strong bond between Jessica G. and the Appellant, and ordered the Appellant be provided post-termination visitation with Jessica G., under such conditions as deemed appropriate by the DHHR.

## II. Standard of Review

We set forth our standard of review in abuse and neglect cases in Syllabus Point 1 of *In the Interest of: Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996), which states as follows:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and

---

signing herself out "against medical advice" from an inpatient treatment program.

4. The circuit court also terminated Kelly G.'s parental rights. She did not appeal that termination.

neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

### III. Discussion

The record before us clearly demonstrates that the Appellant is addicted to prescription medications and that the underlying action was instituted following the Appellant's having overdosed—the overdose resulting in the Appellant's being placed in intensive care and on a ventilator. There is no dispute by the parties that several efforts were undertaken by DHHR and the circuit court, during the pendency of the action below, to provide the Appellant an opportunity to obtain treatment for his addiction.

While the Appellant participated in the treatment plans, it is clear that he did so with varying degrees of effort and ultimately failed to overcome his addiction. This failure resulted in a recommendation by DHHR that the Appellant's parental rights be terminated. The circuit court agreed with DHHR's recommendation and terminated the Appellant's parental rights on the basis that the Appellant's addiction rendered him incapable of providing the necessary parental care and supervision of Jessica G.

On appeal, the Appellant and the guardian *ad litem* for Jessica G. argue that the circuit court erred in failing to properly consider the wishes of Jessica G. before terminating the Appellant's parental rights. The guardian *ad litem* further argues that the conditions giving rise to the neglect of Jessica G.—the Appellant's addiction—were resolvable by a means other than termination of the Appellant's parental rights. This point is succinctly stated in the guardian *ad litem's* brief as follows:

> ... the [DHHR] was wrong when it believed it had no choice but to ask for termination of the Appellant's parental rights. Under West Virginia Code 49–6–5(a)(5), Jessica G. could have been placed in foster care until she reached the age of eighteen. Such disposition could have allowed [the Appellant] to petition the court at a later date and show he was willing to provide for Jessica G.'s needs.

The guardian *ad litem* further argues that another alternative disposition that the court could have considered was to "bifurcate the parental rights of the Appellant ... and terminate his custodial rights only." The guardian *ad litem* reasons that such a bifurcation would have "allowed [the Appellant] to retain his parental rights to Jessica G. and to honor the wishes of Jessica G." To be clear, the guardian *ad litem* does not argue that Jessica G. should be returned to the custody of the Appellant as a result of this appeal and specifically takes the position that the Appellant should not have custody until his addiction is in remission.

The record is clear that the circuit court was made aware by the Appellant, DHHR and the guardian *ad litem* that Jessica G. did not want her father's parental rights terminated and that Jessica G. had a "significant bond" with her father. In granting post-termination visitation to the Appellant, the circuit court acknowledged this bond. However, under *W.Va.Code*, 49–6–5(a)(6) [2006] [5], the circuit court should have

---

5. *W.Va.Code*, 49–6–5(a)(6)[2006] states, in relevant part, as follows:

> Upon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the wel-

fare of the child, terminate the parental, custodial and guardianship rights and responsibilities of the abusing parent and commit the child to the permanent sole custody of the nonabusing parent, if there be one, or, if not, to either the permanent guardianship of the department

considered Jessica G.'s wishes before terminating the Appellant's parental rights:

> Notwithstanding any other provision of this article, the court shall give consideration to the wishes of a child fourteen years of age or older *or otherwise of an age of discretion as determined by the court* regarding the permanent termination of parental rights. (Emphasis added).

*Id.*

After reviewing the circuit court's order terminating the Appellant's parental and custodial rights, as well as a review of the transcript of the dispositional hearing, we find that the circuit court failed to adequately explain why Jessica G.'s, who was thirteen years old at the time of the dispositional hearing (and is now fourteen years old), was not "otherwise of an age of discretion," *Id.*, and why her wishes were not factored into whether termination of the Appellant's parental rights, and the concomitant bond between Jessica G. and her father, might be contrary to Jessica G.'s best interests and emotional well-being. We are particularly concerned with the complete absence of *any* testimony at the dispositional hearing by a licensed mental health care provider as to the possible psychological consequences to Jessica G. by terminating her father's parental rights.

█ In Syllabus Point 5, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001) we held that:

Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.

In the case before us, the circuit court should have considered Jessica G.'s wishes, pursuant to *W.Va.Code*, 49–6–5(a)(6), before terminating the Appellant's parental and custodial rights and failed to do so. Accordingly, we vacate the circuit court's order terminating the Appellant's parental rights and remand this matter for further proceedings. On remand, the circuit court shall consider Jessica G.'s wishes and whether placement in a foster home until her eighteenth birthday might best serve the interest of this child. Those findings shall be specifically set forth in the court's dispositional order.[6]

### IV. Conclusion

For the reasons set forth herein, the order of the Circuit Court of Logan County is vacated and this matter remanded for further proceedings consistent with this Opinion.

Vacated and Remanded.[7]

Justice WORKMAN concurs and reserves the right to file a concurring Opinion.

---

or a licensed child welfare agency. The court may award sole custody of the child to a non-abusing battered parent. If the court shall so find, then in fixing its dispositional order the court shall consider the following factors: (A) The child's need for continuity of care and caretakers; (B) The amount of time required for the child to be integrated into a stable and permanent home environment; and (C) other factors as the court considers necessary and proper. *Notwithstanding any other provision of this article, the court shall give consideration to the wishes of a child fourteen years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights.* (Emphasis added).

6. In the event that the circuit court again finds that termination of the Appellant's parental rights is in Jessica G.'s best interest, we encourage the circuit court to again specifically address—as it appropriately did at the time of the dispositional hearing and dispositional order presently before us in this Appeal—those matters set forth in Syllabus Point 5 of *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995), where we held that:

When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest.

7. Nothing in this Opinion should be interpreted to require the transfer of the custody of Jessica

WORKMAN, Justice, concurring:

(Filed June 24, 2010)

I write separately to emphasize that nothing in the majority opinion, nor in West Virginia Code § 49–6–5(a)(6) (2009), should be misconstrued to imply that the wishes of a child who is fourteen years or older, or who is of an age of discretion as determined by the court, must control a court's decision on whether to terminate parental rights. West Virginia Code § 49–6–5(a)(6) provides that "[n]otwithstanding any other provision of this article, the court shall give consideration to the wishes of a child fourteen years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights." *Id.* (Emphasis added).

While the statute clearly requires a court to consider such a child's wishes, it is not dispositive. This Court has continuously held that a major factor in cases involving children is the children's best interest. *See* Syl. Pt. 7, in part, *In Re Charity H.*, 215 W.Va. 208, 599 S.E.2d 631 (2004). (" '[T]he primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children.' Syl. Pt. 3, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996)."). It should also be noted that "the Court is authorized to exercise a discretion conducive to the best interest of the child." *Hammond v. Dep't of Pub. Assistance of Doddridge County*, 142 W.Va. 208, 216, 95 S.E.2d 345, 349 (1956).

While a consideration for the child's wishes is a factor to consider, also permanency and stability are other factors to consider. In *In Re Katie S.*, the respondent mother argued "that long term foster care . . . [was] the best option for . . . [her] young children[.]" 198 W.Va. at 89, 479 S.E.2d at 599. However, this Court found that argument to be without merit "because the respondent failed to show that she would in the future be able to care for her children." *Id.* This Court found that it was in the best interest of the child to terminate the parental rights, rather than to order long-term foster care. *Id.* Further,

according to the provisions of West Virginia Code § 49–6–5(a), courts are required to have a written permanency plan in place for each child found to be abused or neglected. *Id.* A permanency plan provides for the child to be returned to a parent or both parents or for adoption. If none of these options are available then the child is to enter long-term foster care; however, "[u]nder the Adoption and Safe Families Act, long-term foster care is the choice of last resort." Black's Law Dictionary 1254 (9th ed.2009). The ultimate decision remains squarely within the circuit court's discretion; however, the best interests of the child remains the paramount consideration.

G. from the DHHR to the Appellant. This Opinion vacates *only* the circuit court's June 8, 2009, dispositional order. All prior orders of the circuit court regarding temporary custody of Jessica G. remain in full force and effect.