723 S.E.2d 409

### In re ASHTON M.

### No. 11–0755.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 24, 2012.

Decided Feb. 28, 2012.

Howard J. Blyler, Esq., Law Offices of Howard J. Blyler, Cowen, WV, for Petitioner.

Daniel R. Grindo, Esq., Law Office of Danial Grindo, Gassaway, WV, for Respondent Alan H.

Joyce H. Morton, Esq., VanNostrand & Morton, PLLC, Webster Springs, WV, Guardian ad Litem.

Steven B. Nanners, Esq., Law Offices of Nanners & Willet, L.C., Buckhannon, WV, for Respondent Terry H.

Darrell V. McGraw, Jr., Esq., Attorney General, Lee A. Niezgoda, Esq., Assistant Attorney General, White Hall, WV, for Respondent DHHR.

PER CURIAM:

The petitioner, Michelle M.,[1] appeals the March 31, 2011, order of the Circuit Court of Webster County terminating her parental rights. The appeal is premised on the arguments of the petitioner that the prosecuting attorney failed to recommend only the termination of the petitioner's custodial rights as recommended by the respondent, Department of Health and Human Resources (DHHR), and that the circuit court was in error in terminating her parental rights instead of just her custodial rights. After a thorough review of the record presented for consideration, the briefs, the legal authorities cited, and the arguments of the petitioners and the respondent, we find that the circuit court erred in terminating Michelle M.'s parental rights by failing to comply with the procedural requirements of Rule 34 of the Rules of Procedure for Child Abuse and Neglect Proceedings and by failing to acquire and consider the wishes of the child, Ashton M., as to the termination of Michelle M.'s parental rights as required by W. Va.Code § 49-6-5(a)(6) (2011). We therefore reverse the circuit court's termination of Michelle M.'s parental rights and remand to the circuit court so that it may allow DHHR to revise its case plan and hold a new hearing in compliance with Rule 34. In the event that the revised plan recommends termination of Michelle M.'s parental rights, the court should determine and consider Ashton M.'s wishes in reaching a decision as to Michelle M.'s parental rights as required by W. Va. Code § 49-6-5(a)(6) (2011).

I.

**FACTUAL AND PROCEDURAL BACKGROUND**

On January 19, 2011, DHHR filed a petition alleging the abuse and neglect of Ashton

1. We follow our traditional practice in child abuse and neglect matters, as well as other cases involving sensitive facts by abbreviating the last names of the parties. *See, e.g., In re Jessica G.,* 226 W.Va. 17, 697 S.E.2d 53 (2010).

M., a sixteen-year-old minor, by her mother, Michelle M., and her mother's live-in boyfriend, Terry H. Through the petition, DHHR requested that the Circuit Court of Webster County enter an emergency protective order granting DHHR custody of Ashton M. In support of its petition, DHHR included findings it gathered from interviews with Ashton M., Michelle M., and Terry H.

According to the petition, Ashton M. claimed that beginning in 2003 or 2004 when she was eight or nine years old and continuing until the filing of the petition, Terry H. engaged in contact such as touching her breasts and vagina, fondling her, and watching her shower. She stated that she informed her mother of these alleged abuses.

As noted in its petition, DHHR's interview with Michelle M. revealed the following:

i. Michelle [M.] stated that she had once given Terry [H.] permission to examine the child's breasts, when she had complained about them being sore, because she did not know what to look for and that she believed Terry did know from having previously examined his teenage daughters' breasts.

ii. Michelle [M.] reported that the child had never stated anything to her about being "fingered" and that she did not believe the child when she reported being watched in the shower.[2]

iii. Michelle [M.] reported that she once allowed Terry [H.] to examine the child's vaginal area when the child reported having an unknown discharge.

Also noted in the petition, DHHR's interview with Terry H. shows that he admitted to examining Ashton M.'s breasts on one occasion and also to "maybe once stating that he would give her a cell phone if she would show him her breasts."

After a preliminary hearing on February 2, 2011, the circuit court entered an order on February 3, 2011, placing Ashton M. into the custody of DHHR. In the order, the circuit court found that the statements of Michelle M. and Terry H. confirmed that the alleged abuses occurred and that Michelle M. failed to protect Ashton M. from abuse.

An adjudicatory hearing was held on February 18, 2011, at which time the circuit court took judicial notice of the evidence previously adduced at the preliminary hearing, and the court heard testimony. The circuit court found that Michelle M. and Terry H. were abusive and neglectful parents and that Ashton M. was an abused and neglected child under the meaning of the law.

At the dispositional hearing on March 11, 2011, the circuit court terminated Michelle M.'s parental rights, despite the recommendation of DHHR, given through the testimony of DHHR caseworker Sheila Ware[3] and DHHR's case plan for the child, that only Michelle M.'s custodial rights be terminated. During the hearing, the court discussed the termination of parental rights with the prosecuting attorney, Dwayne Vandevender, and Michelle M.'s attorney, Howard Blyler:

MR. VANDEVENDER: Your Honor, as far as the Adult Repondents, Mr. [H.] and Ms. [M.], they don't want custody. Ms. [M.'s] testimony is that she doesn't believe what happened. She still lives with Mr. [H.] and she states that her actions will continue to not protect Ashton, Your Honor. So we believe that the termination recommended by the Department is—

THE COURT: Well, let me ask you; in light of the overwhelming evidence in this case and in light of the absolute refusal of the mother to acknowledge the truth of that, and based on the desires of the infant to maintain a relationship, why should I not permanently terminate parental rights based on the Supreme Court's decision. I mean, why should I not permanently terminate?

MR. VANDEVENDER: Your Honor, I see no reason why you shouldn't. Post-termination visitation I believe should be at Ashton's discretion. She wants visitation. After the last hearing she asked if

---

2. In her testimony during the dispositional hearing on March 11, 2011, Michelle M. stated again that she did not believe Ashton M.'s allegations regarding Terry H. and that she intended to continue living with Terry H.

3. The petitioner correctly states in her brief that the transcript of the dispositional hearing incorrectly refers to Sheila Ware as "Sheila Winter."

she could see her mother supervised for a few minutes and so I believe she wants that. And I believe that the Court should allow it as per the previous court order. But I see no reason why you shouldn't terminate.

＊　　＊　　＊

MR. BLYLER: ... [F]or the Department's Attorney to now stand up and take a position contrary to what we had been advised puts me in a difficult position because we haven't presented any witnesses and haven't gotten into that. We relied on that. The Guardian ad Litem has relied on that.

＊　　＊　　＊

THE COURT: They first made the recommendation only after I made inquiry based on the case law in this state did the Prosecutor state that he didn't know of any reason why I shouldn't under case law.

At the dispositional hearing, the parties also discussed Ashton M.'s feelings toward her mother and her wishes going forward. In regard to Ashton M.'s wishes as to the termination of her mother's parental rights, the judge stated, "I just don't know what the desires of the child are."

The court entered its order with its findings from the dispositional hearing on March 31, 2012. The order terminated Michelle M.'s parental rights. Michelle M. now appeals this order.

## II.

### STANDARD OF REVIEW

The petitioner requests that this Court reverse the circuit court's order terminating her parental rights. In abuse and neglect proceedings, questions of fact are reviewed for clear error, and questions of law are reviewed *de novo:*

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused

or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety. Syllabus Point 1, *In the Interest of: Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996)."

Syl. pt. 1, *In re Jessica G.,* 226 W.Va. 17, 697 S.E.2d 53 (2010).

## III.

### DISCUSSION

Michelle M. asserts two assignments of error. First, she argues that the prosecuting attorney inappropriately failed to recommend termination of her custodial rights, rather than her parental rights, contrary to the recommendation of DHHR. Second, she argues that the circuit court improperly terminated her parental rights instead of only her custodial rights. As to this second assignment of error, Michelle M. alleges that the circuit court failed to comply with both the W. Va.Code and the Rules of Procedure for Child Abuse and Neglect Proceedings. We now address each of her arguments in turn.

### A.

### Prosecutorial Duty

Whether the prosecuting attorney acted appropriately in this case requires an evaluation of prosecutorial duties in abuse and neglect cases. We have established that " '[a] prosecuting attorney is a constitutional officer who exercises the sovereign power of the State at the will of the people and he is at all times answerable to them. W.Va. Const., art. 2, Sec. 2; art. 3, Sec. 2; art. 9, Sec. 1.' Syl. Pt. 2, *State ex rel. Preissler v. Dostert,* 163 W.Va. 719, 260 S.E.2d 279 (1979)." Syl. pt. 3, *State ex rel. Diva P. v. Kaufman,* 200

W.Va. 555, 490 S.E.2d 642 (1997). This Court has addressed the role of the prosecuting attorney in abuse and neglect cases in syllabus point 4 of *State ex rel. Diva P.:*

In civil abuse and neglect cases, the legislature has made DHHR the State's representative. In litigations that are conducted under State civil abuse and neglect statutes, DHHR is the client of county prosecutors. The legislature has specifically indicated through W.Va.Code § 49–6–10 (1996) that prosecutors must *cooperate* with DHHR's efforts to pursue civil abuse and neglect actions. The relationship between DHHR and county prosecutors under the statute is a pure attorney-client relationship. The legislature has not given authority to county prosecutors to litigate civil abuse and neglect actions independent of DHHR. Such authority is granted to prosecutors only under State criminal abuse and neglect statutes. Therefore, all of the legal and ethical principles that govern the attorney-client relationship in general, are applicable to the relationship that exists between DHHR and county prosecutors in civil abuse and neglect proceedings.

(Emphasis in original).

In the case before us now, Michelle M. argues in her brief to this Court that "the Prosecuting Attorney who is charged with representing the best interest of the Department in this case failed to appropriately make the recommendations that his client set forth on the stand in his argument to the Court." She also states,

I cannot imagine a private attorney representing a private individual in a civil or criminal matter or even an attorney representing a Respondent in an abuse and neglect petition standing up and saying to the court that it doesn't matter what my client wishes the Court to do and make a recommendation contrary to the best interest of his client.

■ We agree with Michelle M. that an attorney-client relationship existed between the prosecuting attorney and DHHR, and as such, the prosecuting attorney had a duty to represent DHHR's recommendation of termination of custodial rights only, not termination of parental rights, to the circuit court.

However, after reviewing the transcript of the dispositional hearing, we disagree with Michelle M.'s conclusion that the prosecuting attorney failed to meet his obligations.

■ During the dispositional hearing, the prosecuting attorney presented evidence through the testimony of the DHHR caseworker that DHHR recommended termination of Michelle M.'s custodial rights. At no point in the hearing did the prosecuting attorney recommend to the circuit court that it terminate Michelle M.'s parental rights. We believe Michelle M. mischaracterizes the statements of the prosecuting attorney in his responses to the circuit court's questions regarding termination of parental rights. Rather, the circuit court attempted to clarify the prosecuting attorney's responses by stating that the prosecuting attorney recognized that the circuit court had the legal authority to terminate parental rights despite DHHR's recommendation that only Michelle M.'s custodial rights be terminated.

■ We also note that in DHHR's original petition to the circuit court to remove Ashton M. from the custody of Michelle M. and Terry H. and place her in DHHR's custody, DHHR included the following: "The [DHHR] would further pray that in the event the Court deems it appropriate, the Court order the *termination of the parental or custodial rights* and/or responsibilities of the abusing parents and commit said infant to the permanent custody of the [DHHR]...." (Emphasis added). At no point after filing this petition did DHHR seek to clarify that it no longer sought the termination of parental rights. Therefore, even if the prosecuting attorney had actively recommended that the circuit court terminate parental rights instead of custodial rights, he still would not have been violating his duty to his client. Therefore, we find that the prosecuting attorney did not act inappropriately during the dispositional hearing.

**B.**

**Rejection of the Case Plan**

■ Michelle M. alleges that the circuit court's dispositional hearing order terminat-

ing her parental rights must be reversed because it does not comply with Rule 34 of the Rules of Procedure for Child Abuse and Neglect Proceedings. Rule 34 states,

> If objections to the child's case plan are raised at the disposition hearing, the court shall enter an order:
>
> (a) Approving the plan;
>
> (b) Ordering compliance with all or part of the plan;
>
> (c) Modifying the plan in accordance with the evidence presented at the hearing; or
>
> (d) Rejecting the plan and ordering [DHHR] to submit a revised plan within thirty (30) days. If the court rejects the child's case plan, the court shall schedule another disposition hearing within forty-five (45) days.[4]

Michelle M. relies on subsection (d) to support the proposition that, upon the circuit court's objection to the child's case plan recommending the termination of custodial rights, the circuit court should have scheduled another dispositional hearing and ordered DHHR to create a revised plan.

None of the parties cites to case law to support or refute Michelle M.'s application of this rule. We have only discussed Rule 34 in one case: *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001). In that case, DHHR submitted a case plan recommending that the mother receive an improvement period with the ultimate goal of reunification of the children with the mother. The circuit court did not agree that the mother should receive an improvement period and entered an order terminating her parental rights to one of her children. This Court found that "[t]he lower court, through its disposition order, implicitly rejected the case and permanency plan submitted by the DHHR."

Like *In re Edward B.*, the circuit court in the case at bar did not follow the DHHR case plan recommendation and terminated the parental rights of the petitioner. In doing so, the circuit court implicitly rejected that case plan. Therefore, as Michelle M. argues, under Rule 34(d), the circuit court

should have scheduled a subsequent dispositional hearing and should have ordered that DHHR create a revised case plan.

During oral argument, Michelle M. argued that W. Va.Code § 49–5D–3a(a) (2004) should also apply in this case, but that there appears to be a conflict between Rule 34 and this statute. Michelle M. referred to § 49–5D–3a to support her proposition that the circuit court acted prematurely in terminating her parental rights. Section 49–5D–3a(a) reads,

> In any case in which a multidisciplinary treatment team develops an individualized service plan for a child pursuant to the provisions of section three of this article, the court shall review the proposed service plan to determine if implementation of the plan is in the child's best interests. If the multidisciplinary team cannot agree on a plan or if the court determines not to adopt the team's recommendations, it shall, upon motion or sua sponte, schedule and hold within ten days of such determination, and prior to the entry of an order placing the child in the custody of the department or in an out-of-home setting, a hearing to consider evidence from the team as to its rationale for the proposed service plan. If, after hearing held pursuant to the provisions of this section, the court does not adopt the teams's recommended service plan, it shall make specific written findings as to why the team's recommended service plan was not adopted.

Specifically, Michelle M. contends that § 49–5D–3a(a) required the circuit court to schedule a hearing to reevaluate the case after a ten-day period. Michelle M. noted that this ten-day requirement appears to conflict with the forty-five day requirement of Rule 34.

The conflict Michelle M. believes exists is easily resolved. Section 49–5D–3a(a) and Rule 34 do not refer to the same thing; Rule 34 refers to a case plan developed according to § 49–6–5(a). Section 49–5D–3a(a) refers to an individualized service plan created by a multidisciplinary team (MDT) according to

---

4. The "case plan" described in this rule is formed by combining the "family case plan" as described in W. Va.Code § 49–6D–3 (1998) with additional information required by and described in § 49–6–5(a) (2011).

§ 49–5D–3 (2007).[5] In this case, the record shows that the MDT did make a recommendation as to Michelle M.'s rights, but the record does not show that a multidisciplinary team created an individualized service plan for Ashton M. Therefore, § 49–5D–3a(a) does not apply in this case.

Although § 49–5D–3a(a) does not apply, Rule 34 does apply to the instant case. DHHR created a case plan that was rejected by the circuit court, and DHHR was not given the opportunity to revise the case plan before the circuit court entered its order terminating Michelle M.'s parental rights. Under the *de novo* review of this legal issue, we find that the circuit court committed reversible error by failing to comply with Rule 34.

## C.

### Consideration of the Child's Wishes

▄▄▄ In arguing that the circuit court erred in terminating her parental rights, Michelle M. also references W. Va.Code § 49–6–5(a)(6)(C) (2011), which requires the court to "give consideration to the wishes of a child fourteen years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights." In her brief to this Court, the Guardian ad Litem references *In re Jessica G.*, 226 W.Va. 17, 697 S.E.2d 53 (2010), to support the proposition that Ashton M.'s wishes regarding the termination of her mother's parental rights should have been considered before Michelle M.'s parental rights were terminated.

▄▄▄ The pertinent facts of *In re Jessica G.* are similar to the those of the case at bar. In that case, the parent's parental rights were also terminated in an abuse and neglect proceeding. Unlike here, in *In re Jessica G.*, the circuit court had been presented with evidence that the child, a thirteen-year-old, did not wish for her father's rights to be terminated. The Court found,

After reviewing the circuit court's order terminating the Appellant's parental and custodial rights, as well as a review of the transcript of the dispositional hearing, we find that the circuit court failed to adequately explain why Jessica G.'s, who was thirteen years old at the time of the dispositional hearing (and is now fourteen years old), was not "otherwise of an age of discretion," *Id.*, and why her wishes were not factored into whether termination of the Appellant's parental rights, and the concomitant bond between Jessica G. and her father, might be contrary to Jessica G.'s best interest and emotional well-being. We are particularly concerned with the complete absence of *any* testimony at the dispositional hearing by a licensed mental health care provider as to the possible psychological consequences to Jessica G. by terminating her father's parental rights. In Syllabus Point 5, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001) we held that:

> Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.

*In re Jessica G.*, 226 W.Va. 17, 22, 697 S.E.2d 53, 58 (2010).

The facts in the record demonstrate that the circuit court, in deciding to terminate Michelle M.'s parental rights, did not have before it Ashton M.'s wishes regarding the termination of her mother's parental rights when it made its decision. During the dispositional hearing, none of the parties expressed what Ashton M.'s wishes were in regard to the termination of Michelle M.'s parental rights. It appears from the record

---

**5.** Pursuant to § 49–5D–3(a), individualized service plans are only created "for children who are victims of abuse or neglect and their families when a judicial proceeding has been initiated involving the child or children for juveniles and their families involved in status offense or delinquency proceedings."

that the parties had only acquired Ashton M.'s wishes as to the termination of Michelle M.'s custodial rights and not the termination of Michelle M.'s parental rights. Also, the circuit court noted that it did not know what the desires of Ashton M. were. Finally, there is no discussion of the wishes of the child regarding the termination of Michelle M.'s parental rights in the circuit court's March 31, 2011, order.

Upon *de novo* review of the circuit court's March 31, 2011, order, we find that the circuit court failed to determine or consider Ashton M.'s wishes regarding the termination of her mother's parental rights as required by W. Va.Code § 49–6–5(a)(6).

## IV.

## CONCLUSION

For the reasons set forth above, this Court reverses the circuit court's order entered March 31, 2011, which terminates the petitioner's parental rights. This case is remanded to the Circuit Court of Webster County so that it may comply with the requirements of Rule 34 of the Rules of Procedure for Child Abuse and Neglect Proceedings. In the event that DHHR's revised case plan recommends termination of parental rights, the circuit court shall determine and consider the wishes of Ashton M. pursuant to W. Va.Code § 49–6–5(a)(6)(C).

Reversed and remanded with directions.

Justice WORKMAN concurs in part and dissents in part and reserves the right to file a separate opinion.

WORKMAN, Justice, concurring, in part, and dissenting, in part:

I dissent to the majority's conclusion that the lower court failed to consider the wishes of the child, Ashton M., pursuant to West Virginia Code § 49–6–5(a)(6)(C) (2009 & Supp.2011)[1] regarding disposition, and to their finding that the circuit court did not comply with the requirements of Rule 34 of the Rules of Procedure for Child Abuse and

Neglect. I concur with the majority regarding the determination "that the prosecuting attorney did not act inappropriately during the dispositional hearing[,]" when the prosecutor recognized that the circuit court had the legal authority to terminate the Petitioner mother's parental rights despite the DHHR's recommendation that only her custodial rights be terminated.

### I.

The majority looks almost silly in reaching the conclusion that the circuit court failed to consider Ashton's wishes, because an examination of the record of the dispositional hearing makes it abundantly clear that the circuit court gave careful consideration to the child's wishes and fashioned a disposition that would protect her from further abuse, but still honored her wishes to have continued contact with her mother. At the dispositional hearing, the guardian ad litem argued to the circuit court that as long as Ashton could maintain contact and a relationship with her mother, she would be *"happy"* with the circuit court's decision. (Emphasis added). Specifically, after the circuit court brought up the possibility that it would terminate the Respondent mother's rights, the guardian ad litem argued as follows:

MS. MORTON: Your Honor, perhaps there's a distinction without a difference. Ashton does want to maintain a relationship and contact with her mother. *The reason I did call her in here to discuss this matter of legal verus parental rights is that she is 16.* What she wants to accomplish is the continued contact with her mother.

Now, the way I understood termination of custodial rights was that Michelle would be forever barred from having physical custody of Ashton. Now if her parental rights were terminated, parental legal rights were terminated, that would also bar any inheritance by Ashton from her mother or—

THE COURT: I don't know where that comes from. As a matter of fact, I don't

---

1. West Virginia Code § 49–6–5(a)(6)(C) requires the court to "give consideration to the wishes of a child fourteen years of age or older or other-

wise of an age of discretion as determined by the court regarding the permanent termination of parental rights." *Id.*

know any case that addresses that issue. With regard to that, certainly the issue of support is not terminated by the termination of parental rights.

But again, my question is the Supreme Court has said that with a person of teenage years if it causes some emotional impact upon the child, that termination of parental rights, *the Court should consider the wishes of the child in that regard.*

Now that may be in some way the distinction without a difference, if I understand what you're saying; *that I can terminate parental rights if it doesn't have any adverse impact upon the child but still meets the desires of the child by permitting post-termination visitation.* Where I can designate that visitation is that when you look to the decision by the Supreme Court that indicates that in terms of the parental rights that have been terminated up to [sic] adoption, any party can file a motion for modification.

It clearly says in that case that if the parental rights have been terminated, then the parents don't have the right to do that. But if the parental rights have not been terminated then that would give the mother the right to come in and seek a modification prior to disposition subject to termination of parental rights. So I think there is a significant legal difference. I just don't know what the desires of the child are.

MS. MORTON: It would be significant for Ashton, not 18.

THE COURT: She's not 18, she's 16.

MS. MORTON: I mean she's 16, which means she's very close. If she were a child of 2 or 6—Your Honor, she's out in the hall and I could bring her in. It's just very difficult for her to come into these proceedings. It's hard. *What I'm saying to you is this; I don't know that she would understand the legal distinction that the Court just made and obviously I didn't understand it all either because I misspoke. However, as long as the maintenance of contact and visitation continues with her mother, how-*

*ever that is accomplished, is intact I think the child will be happy.*

\*  \*  \*

MS. MORTON: Like I said, *I think so long as that means is accomplished and maintained I think she's going to be happy. As far as the child is concerned it's the end that is important, not the means or way which we get there.*

\*  \*  \*

THE COURT: The Court finds that the Respondent Mother has failed to adequately protect the child; that she failed to take reasonable action to protect the child in light of clear and convincing evidence to the contrary. *The Court is further of the opinion that she desires to maintain contact and a relationship with Mr. H[ ][.] [the Respondent's boyfriend] over maintaining custodial rights of the child.*

The Court finds there is no reasonable grounds to believe that the conditions of the abuse and neglect that have arisen can be reasonably corrected within the foreseeable future. *There is absolutely no evidence before this Court that the termination of the Respondent Mother's parental rights will adversely affect the child. In fact, the desires of the child set forth in the record in this case indicates that the child's interests can be adequately protected by the Court granting the Respondent Mother supervised post-termination visitation with the child in accordance with the child's desires.*

*Therefore, the parental rights of the Respondent Mother are hereby permanently terminated and the Court will grant supervised post-termination visitation with the child to be supervised by the grandmother at a reasonable time provided the child will never be out of the presence of the grandmother with the mother and pursuant to the desires of the infant child.*

(Emphasis added).

Obviously, neither the Petitioner mother's counsel nor the guardian ad litem seemed to understand that even when parental rights are terminated, visitation and contact can continue. This Court first enunciated the

concept of post-termination visitation in *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995). The circuit court understood the law and fashioned thereunder a means to protect Ashton from further abuse while still permitting her continued contact with her mother in a safe setting and even made specific findings regarding the child's wishes as can be seen from this portion of the transcript in which the circuit court states:

> *Therefore, the parental rights of the Respondent Mother are hereby permanently terminated and the Court will grant supervised post-termination visitation with the child to be supervised by the grandmother at a reasonable time provided the child will never be out of the presence of the grandmother with the mother and pursuant to the desires of the infant child.*

(Emphasis added). And although the guardian ad litem did not know the correct terminology, she stated the child's wishes very clearly on the record, and the judge not only considered, but also honored them.

Exacerbating the problem with the majority turning a part of its decision on this issue is that neither the Petitioner mother nor the guardian ad litem even assigned as error the circuit court's alleged failure to consider the wishes of the child, but merely argued it within the context of the assignment of error relating to termination. Consequently, the majority has elevated an argument to "assignment of error" status. This Court has consistently found that assignments of error nor raised on appeal are deemed waived. *See Covington v. Smith*, 213 W.Va. 309, 317 n. 8, 582 S.E.2d 756, 764 n. 8 (2003) (stating that casual mention of an issue in a brief is insufficient to preserve the issue on appeal); *Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 135, 140 n. 10, 506 S.E.2d 578, 583 n. 10 (1998) (finding that "[i]ssues not raised on appeal or merely mentioned in passing are deemed waived." (citation omitted)); *State v. Lilly*, 194 W.Va. 595, 605 n. 16, 461 S.E.2d 101, 111 n. 16 (1995) (finding that " 'casual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal.' " (internal quotations and citation omitted)). Nor did the guardian ad litem and mother state an objection for the record on this issue. Consequently, the majority takes an alleged error that was not preserved by any party before the circuit court or made the subject of an assignment of error here and reverses the circuit court on that basis.

Moreover, nothing in *In re Jessica G.*, 226 W.Va. 17, 697 S.E.2d 53 (2010), or in West Virginia Code § 49–6–5(a)(6), which is relied upon by the majority in reversing the circuit court on this issue, can be construed "to imply that the wishes of a child who is fourteen years or older, or who is an age of discretion as determined by the court, must control a court's decision on whether to terminate parental rights." *In re Jessica G.*, 226 W.Va. at 23, 697 S.E.2d at 59 (Workman, J., concurring). Again, West Virginia Code § 49–6–5(a)(6) only provides that "[n]otwithstanding any other provision of this article, the court shall give consideration to the wishes of a child fourteen years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights." *Id.* Thus, the child's only right emanating from the foregoing statute is to express his or her wishes regarding the termination of the parental rights. "The ultimate decision [concerning termination of parental rights] remains squarely within the circuit court's discretion; however, the best interests of the child remains the paramount consideration." 226 W.Va. at 23, 697 S.E.2d at 59. In the instant case, it is clear from the hearing below that the guardian ad litem expressed Ashton's desires to maintain a relationship with her mother, and that so long as permitted to do so, that was all that mattered to Ashton. The circuit court considered this desire in granting supervised post-termination visitation.

## II.

Rule 34 of the Rules of Procedure for Child Abuse and Neglect Proceedings provides:

> If objections to the child's case plan are raised at the disposition hearing, the court shall enter an order:
>
> (a) Approving the plan;

(b) Ordering compliance with all or part of the plan;

(c) Modifying the plan in accordance with the evidence presented at the hearing; or

(d) Rejecting the plan and ordering the Department to submit a revised plan within thirty (30) days. If the court rejects the child's case plan, the court shall schedule another disposition hearing within forty-five (45) days.

*Id.* That rule was examined in *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001), wherein the Court held in syllabus point five that

[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been *substantially disregarded or frustrated,* the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.

*Id.* at 624, 558 S.E.2d at 623 (emphasis added).

The only difference in the DHHR's recommendation and the circuit court's disposition is one of semantics. Thus, the circuit court Order did not substantially disregard or frustrate the disposition process recommendation as required by *In re Edward B. Id.* Instead, after hearing argument of counsel (and providing an opportunity for evidence to be taken if any party desired to do so), the circuit court modified the plan in accordance with the hearing. *Id.*

Upon remand, the circuit court will surely once again hear the child's wishes and act as is his prerogative as the presiding circuit court judge in terminating rights and allowing post-termination visitation. This result is not only reasonable, compassionate and legally sound, it also protects this child from further abuse. It should be noted that the Petitioner mother continued to maintain her boyfriend's innocence of sexual abuse of her child, even in light of his own admissions to sexual abuse. A mother's choice of a boyfriend over her child in this type of scenario clearly reflects a lack of basic maternal instinct and ability to protect. Absent termination of legal rights, this mother could return to court and seek to regain full legal rights to this child. The circuit court wanted to see to it that the child's wishes were honored, but also wanted to protect her from further abuse.

Perhaps the majority will yawn, and say, oh well, this is just a per curiam opinion and this child will be eighteen soon anyway. But it must be remembered that the law set forth by the majority will have precedential value [2] and may be cited as legal support in future cases where there is not the potentially imminent protection of a child reaching age eighteen.

---

2. *See* Syl. Pts. 3 and 4 of *Walker v. Doe*, 210 W.Va. 490, 558 S.E.2d 290 (2001)(holding that "[p]er curiam opinion have precedential value as an application of settled principles of law to facts necessarily differing from those at issue in signed opinions. The value of a per curiam opinion arises in part from the guidance such decisions can provide to the lower courts regarding the proper application of the syllabus points of law relied upon to reach decisions in those cases[,]" and "[a] per curiam opinion may be cited as support for a legal argument.").