STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**

November 21, 2018

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **C.B. and A.P.**

**No. 18-0324** (Kanawha County 16-JA-634 and 636)

## MEMORANDUM DECISION

Petitioner Mother J.B., by counsel Jennifer N. Taylor, appeals the Circuit Court of Kanawha County's March 8, 2018, order terminating her parental rights to C.B. and A.P.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Jennifer R. Victor, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights rather than imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court affirms the circuit court's termination of petitioner's parental rights to C.B., but vacates and remands the circuit court's order terminating petitioner's parental rights to A.P.[2] This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure, and a memorandum decision is appropriate to resolve the issues presented.

In December of 2016, the DHHR filed a petition alleging that petitioner exposed her newborn child, C.B., to controlled substances in utero. According to the DHHR, the child spent six weeks in the neonatal intensive care unit as a result of this exposure. Additionally, the DHHR alleged that petitioner and the father became physically confrontational with each other at the hospital and that petitioner later obtained a domestic violence protective order against the father. At the time the petition was filed, the DHHR indicated that A.P. resided with his father in Virginia. Later in December of 2016, petitioner waived her preliminary hearing.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]The effect of this decision applies to petitioner and her parental rights to C.B. and A.P. only. The rights of any other parties named in the circuit court's March 8, 2018, order are unaffected by this decision.

The circuit court held an adjudicatory hearing in February of 2017 and petitioner stipulated to drug use while pregnant. She also stipulated that her drug use impaired her ability to parent. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. The circuit court ordered petitioner to participate in remedial and reunification services provided by the DHHR, including a psychological evaluation, parenting education, adult life skills education, random drug screens, domestic violence counseling, substance abuse treatment, and supervised visitation. Additionally, the circuit court required that petitioner maintain appropriate housing and verifiable employment.

In August of 2017, the circuit court reviewed petitioner's improvement period. The court report indicated that petitioner missed twenty-two drug screens, visited inconsistently with C.B., and inconsistently attended parenting classes and therapy. The court report noted that petitioner and the father frequently left the state which created difficulties in scheduling their services. The circuit court set the case for a dispositional hearing, which was later continued to give petitioner more time to participate in services.

The circuit court held the final dispositional hearing in January of 2018 and the DHHR moved to terminate petitioner's rights. In support of its position, the DHHR called a case worker and two service providers as witnesses. The guardian for the children recommended that petitioner's parental rights to C.B. be terminated. However, the guardian recommended that petitioner's parental rights to A.P. should not be terminated and that she believed termination was against A.P.'s wishes. Petitioner did not testify or call witnesses on her behalf. The evidence presented showed that petitioner was inconsistent in her participation and made little improvement after nearly a year of DHHR intervention. Petitioner continued to miss drug screens and visitation with the child. Additionally, petitioner and the father engaged in domestic violence as late as December of 2017. On cross-examination, the witnesses agreed that petitioner was more compliant with services and visitation when she was not in a relationship with the father. However, the witnesses all noted that petitioner ended and renewed her relationship with the father multiple times over the year-long improvement period. Ultimately, the circuit court found that petitioner failed to successfully complete her post-adjudicatory improvement period. Further, the circuit court found that petitioner had not responded to a reasonable family case plan and that she was habitually addicted to controlled substances to the extent that proper parenting skills had been seriously impaired. Finally, the circuit court found there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected. Accordingly, the circuit court terminated petitioner's parental rights to C.B. and A.P. in its March 8, 2018, order. Petitioner now appeals that order.[3]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the

---

[3]C.B.'s father's parental rights were also terminated below. According to the parties, C.B.'s permanency plan is adoption in his current foster home. A.P.'s permanency plan is continuation in his nonabusing father's custody.

facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights rather than imposing a less-restrictive dispositional alternative. Petitioner asserts that at the dispositional hearing she was substance free and had removed herself from the violent relationship with the father. Therefore, petitioner insists that the circuit court's finding that there was no reasonable likelihood that she could correct the conditions of abuse and neglect in the near future was unfounded. Upon our review of the record, we disagree with petitioner's argument.

West Virginia Code § 49-4-604(b)(6) provides that a circuit court may terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. West Virginia Code § 49-4-604(c)(3) provides that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when "the abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child."

The circuit court correctly found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected because petitioner did not respond to or follow through with a reasonable family case plan. Petitioner did not fully comply with her improvement period and it did not appear as though she remedied any of the conditions of abuse and neglect. The record clearly reflects that petitioner continued to engage in domestic violence with the father of C.B. late into her improvement period and made little improvement in parenting after a year of services. Also, petitioner continued to miss drug screens, despite her assertions that she was drug free. Although petitioner asserts that she had ended the relationship with the abusive father, the evidence shows that petitioner reunited with the father multiple times during the improvement period. This Court has previously held that

"courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical

3

development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4. The evidence showed that petitioner would likely reunite with the abusive father of C.B. as she established a pattern of ending and rekindling that relationship over the course of the proceedings. Accordingly, we find no error in the circuit court's finding that there was no reasonable likelihood for the conditions of abuse and neglect to be substantially corrected in the near future.

Additionally, we find termination of petitioner's parental rights to be in the best interests of C.B. As petitioner could not prove that she resolved her issues of substance abuse and domestic violence, there is a serious risk that C.B. would be exposed to those conditions of abuse and neglect. Further, we have also held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Accordingly, the circuit court's termination of petitioner's parental rights to C.B. is appropriate and affirmed on appeal.

However, we find error in the circuit court's termination of petitioner's parental rights to A.P. Specifically, the circuit court did not consider the wishes of A.P. as required by West Virginia Code § 49-4-604(b)(6)(C). This code section provides, in part: "Notwithstanding any other provision of this article, the court *shall* give consideration to the wishes of a child fourteen years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights." (Emphasis added.) The guardian's dispositional report does not mention the wishes of A.P, who was fourteen years old at the time of the hearing. However, the guardian provided the following statement during the dispositional hearing:

> I have had an opportunity to talk to [J.P.] (father of A.P.). I didn't even try [A.P.], because this is not a conversation you would have with a stranger over the phone (referring to a discussion about A.P.'s preference in terminating petitioner's parental rights). . . . I don't think [J.P.] and [A.P.] really want [petitioner's] parental rights terminated, and I'm not recommending that.

We direct the guardian to the "Guidelines for Guardians Ad Litem in Abuse and Neglect Proceedings" which were adopted into the Rules of Procedure for Child Abuse and Neglect Proceedings in Appendix A. These guidelines require that guardians for children over three years in the care of respondents "request from the respondent(s)' attorney interviews with the child out of the presence of the respondent(s) in a manner and environment appropriate to the child's age and maturity." Additionally, guardians are required to "[e]xplain to the child, in terms the child

can understand, the disposition" and "[a]pprise the court of the child's wishes." Although we understand that A.P. resides in a different state, guardians ad litem have a duty to confer with their clients, the children in abuse and neglect cases, and provide their opinions to the circuit court when applicable. Certainly, considering the age of A.P., the guardian should have sought and provided the child's expressed opinion to the circuit court so that the circuit court could correctly determine which disposition was in the best interests of the child.

Further, we have previously held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W.Va. 390, 686 S.E.2d 41 (2009). The circuit court's failure to consider the wishes of A.P. substantially disregards or frustrates the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes. *See In re Jessica G.*, 226 W.Va. 17, 697 S.E.2d 53 (2010)(holding that the circuit court's failure to consider a child's wishes, when that child is an age of discretion, is reversible error.) Therefore, the circuit court's order terminating petitioner's parental rights to A.P. is vacated, insomuch as it relates to this child only, and is remanded for further dispositional hearings in which A.P.'s wishes are fully investigated and provided to the circuit court and considered following the fulfillment of the guardian's duties.

For the foregoing reasons, we affirm the circuit court's termination of petitioner's parental rights to C.B., but vacate and remand the circuit court's order terminating petitioner's parental rights to A.P. for further proceedings consistent with the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and Chapter 49 of the West Virginia Code.[4] The circuit court is hereby ordered to hold the appropriate hearings and issue a final order in this case within sixty days. The Clerk is hereby directed to issue the mandate contemporaneously herewith.

Affirmed, in part, vacated, in part, and remanded.

**ISSUED**: November 21, 2018

---

[4]Based on respondents' representations and the record on appeal, the Court finds that A.P.'s current placement is appropriate and in his best interest at this time. Accordingly, we instruct the circuit court to maintain this placement until such time as the circuit court is tasked with determining an appropriate permanent placement for the child pursuant to West Virginia Code § 49-4-604(b) and the applicable Rules of Procedure for Child Abuse and Neglect Proceedings.

**CONCURRED IN BY**:

Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment

**CONCURRING AND WRITING SEPARATELY:**

Chief Justice Margaret L. Workman


WORKMAN, Chief Justice, concurring:

I concur with the majority's decision and write separately to emphasize the significance of the requirements of West Virginia Code § 49-4-604(b)(6)(C) and the vital importance of guardians ad litem for children who are abused and/or neglected living up to their legal responsibilities in that role.

The statute provides, in pertinent part, "Notwithstanding any other provision of this article, the court shall give consideration to the wishes of a child fourteen years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights." Pursuant to that statute, as well as applicable case law, a court must consider the wishes of a child fourteen years of age or older in making a determination of termination of parental rights. The guardian ad litem's decision to forego direct communication with the child in this case constituted a substantial oversight, detrimentally impacting the rights of the child. This Court has repeatedly outlined the duties of guardians. *See In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993) (providing explicit direction for guardians ad litem regarding representation of children). Guardians ad litem must establish direct contact with the children they represent, either directly if the child is of a sufficient age to express himself and to explain facts and feelings, or indirectly through foster parents or other temporary care-takers if the child is not of such an age.

Upon remand, the wishes of the child must be identified, and the best interests of the child must be determined. As this Court recognized in *In re Jessica G.*, 226 W.Va. 17, 697 S.E.2d 53 (2010), the child's wishes must be "factored into whether termination of the . . . parental rights, and the concomitant bond between [child] and [parent], might be contrary to [child's] best interests and emotional well-being." *Id*. at 22, 697 S.E.2d at 58.

In appropriate cases, parental legal rights may continue even if the child must be removed from the parent's physical custody for his safety and best interests. In addition, even where legal rights are terminated, if the lower court ascertains that there is a parent-child emotional bond, the preservation of which is important to the child's well-being, post-termination visitation is an alternative. In *Jessica G.*, this Court held that a request may be made for a continued relationship

between parent and child even where termination is required, if such contact is in the best interests of the child. *Id.* This concept was specifically explained in syllabus point five of *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995), as follows:

> When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest.

S*ee also In re T.W.*, 230 W.Va. 172, 182, 737 S.E.2d 69, 79 (2012) ("[T]he trial court should have provided a meaningful opportunity for these children to express their concerns with regard to the conditions of abuse and neglect allegedly existing within their home, as well as their wishes regarding the termination of their father's parental rights. On remand, the trial court is directed to determine the most appropriate manner in which these two children may make their wishes known to the court.").

The guardian ad litem on remand must communicate with this child, and gain an understanding of his thoughts, feelings, and wishes. However, the reviewing court retains the ultimate discretion to determine the best interests of the child. Although a child of fourteen or older may have a strong opinion on the issue of termination of custodial rights, the best interests of that child may dictate otherwise. *See In re Ashton M.*, 228 W.Va. 584, 594, 723 S.E.2d 409, 419 (2012) ("Moreover, nothing in *In re Jessica G.*, 226 W.Va. 17, 697 S.E.2d 53 (2010), or in West Virginia Code § 49-6-5(a)(6) . . . can be construed 'to imply that the wishes of a child who is fourteen years or older, or who is an age of discretion as determined by the court, must control a court's decision on whether to terminate parental rights.' *In re Jessica G.*, 226 W.Va. at 23, 697 S.E.2d at 59 (Workman, J., concurring)."). On remand, the wishes of the child must be considered within the broader realm of determination of best interests.

Sadly, circuit courts around West Virginia are swamped with abuse and neglect cases, especially since the opioid crisis erupted. These cases are difficult and time-consuming. Yet even with the increased difficulty both qualitatively and quantitatively, there cannot be a cookie-cutter approach in every case, and the considerations outlined herein exist for the purpose of making the best legal decisions possible in a highly human arena.