# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **J.L., T.Y., and G.B.**

**No. 17-0570** (Wood County 13-JA-61, 13-JA-62, & 13-JA-63)

**FILED**

**November 22, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother A.L., by counsel Berkeley L. Simmons, appeals the Circuit Court of Wood County's May 25, 2017, order terminating her parental rights to J.L., T.Y., and G.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order.[2] The guardian ad litem ("guardian"), Courtney L. Ahlborn, filed a response on behalf of the children in support of the circuit court's order. The father C.B., by counsel Ernest M. Douglass, filed a brief in support of the circuit court's order. The father L.Y., by counsel Eric K. Powell, also filed a brief in support of the circuit court's order. Petitioner filed two reply briefs. On appeal, petitioner argues that the circuit court erred in (1) not allowing thirteen-year-old T.Y. to express her wishes; (2) not returning petitioner's children to her custody despite the recommendation set forth in the evaluating psychologist's parental fitness evaluation; (3) terminating her parental rights when none of the factors requiring termination set forth in West Virginia Code §49-4-604(b)(7) were present; (4) making erroneous findings of fact based on the DHHR's and the guardian's biased and unfair treatment of her; (5) not considering that petitioner was the only parent in the proceedings who sought and obtained employment; and (6) entering its May 25, 2017 dispositional order, which departed from the circuit court's observations on the bench.[3]

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective on May 20, 2015. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below. It is important to note, however, that the abuse and neglect statutes underwent minor stylistic revisions and the applicable changes have no impact on the Court's decision herein.

[3]Petitioner lists thirteen assignments of error in her brief on appeal. However, in the argument section, petitioner outlines only the five arguments mentioned in this memorandum

(continued . . . )

1

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2013, the DHHR filed an abuse and neglect petition against petitioner and J.L.'s father after receiving a referral from the Family Court of Wood County. The DHHR alleged that the child J.L. had been diagnosed with severe anxiety such that he was prescribed Prozac, which was believed to be due to his parents' inability to get along. Petitioner and J.L.'s father had been litigating domestic relations issues in family court since 2007. In the referral, the DHHR stated that J.L. and T.Y. were interviewed and their responses indicated that the children were being influenced by petitioner to make false reports against J.L.'s father. Further, the DHHR noted that petitioner previously made false reports against J.L.'s father and ultimately pled guilty to three counts of false reporting in 2012. The DHHR alleged that petitioner abused and neglected J.L. by falsely accusing his father of abuse in an attempt to alienate the child from his father. Due to these false allegations, J.L. and his father were separated for a long period of time, thereby disrupting their bond.[4]

The circuit court held an adjudicatory hearing in November of 2013, during which petitioner stipulated that she emotionally neglected J.L. by willfully and wantonly taking action to alienate the child from his father. The circuit court granted petitioner a post-adjudicatory improvement period in which she was required to participate in parenting skills and therapy and undergo a psychological evaluation. Petitioner thereafter underwent a psychological evaluation in which the psychologist found that petitioner established a pervasive lack of insight during her persistent efforts to alienate J.L. from his father. Further, the psychologist found that petitioner consistently placed the child in harm's way, denied him a relationship with his father, and ignored the recommendation of professionals involved in her case. J.L. was placed in the custody of his father throughout petitioner's improvement period.

---

decision's opening paragraph. This Court has previously cautioned parties that "[a]lthough we liberally construe briefs in determining issues presented for review, issues which are . . . mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock*, 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996). We have further explained that "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim[.]" *State Dep't of Health and Human Res. v. Robert Morris N.*, 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995). *See also W.Va. R. App. Proc. 10* (listing requirements for briefs filed with this Court). As such, we decline to address any of the assignments of error petitioner has listed that are not addressed in the argument section of her brief.

[4]No allegations of abuse and/or neglect involving T.Y. and G.B. were raised in the petition at that time and they remained in petitioner's custody.

In November of 2014, the circuit court held a review hearing regarding petitioner's post-adjudicatory improvement period. The circuit court directed the former guardian to submit a recommended parenting plan. However, issues arose with that guardian such that the proceedings were delayed until the circuit court appointed a new guardian in November of 2015. Later in November, petitioner made additional allegations of abuse against J.L.'s father and stated that J.L. does not sleep well before he returns to his father's home, wants to remain with petitioner, and has become "nervous" since living with his father. The circuit court ordered the DHHR to investigate these issues.

The circuit court held a hearing in February of 2016 to address the allegations made by petitioner against J.L.'s father. The DHHR stated that it failed to substantiate the allegations made by petitioner. Petitioner then withdrew her motion for custody of J.L., claimed that she was a victim of domestic violence at the hand of G.B.'s father, and requested services to address this issue. At the conclusion of the hearing, the circuit court placed T.Y. and G.B. in the custody of the DHHR pending further investigation. The DHHR subsequently filed an amended petition alleging that petitioner continued to make false reports against J.L.'s father in an attempt to regain custody of the child and alienate him from his father. Additionally, the DHHR alleged that it conducted an unannounced home visit at petitioner's home and found it to be in a state of disarray. Further, G.B.'s father appeared to be living in the home, contrary to petitioner's prior claims. The DHHR also alleged that petitioner failed to maintain G.B. in preschool despite court orders requiring her to do so, and failed to assure that T.Y. attended school. Petitioner also failed to provide T.Y. with necessary therapy.

In March of 2016, the circuit court held an adjudicatory hearing regarding the amended petition. Petitioner stipulated to the allegations that she failed to meet the educational needs of T.Y., failed to maintain G.B. in preschool, deprived G.B. of assistance to meet his developmental needs, maintained an unsanitary and unfit home for the children during the home visit, and participated in domestic violence with G.B.'s father in the children's presence. However, the DHHR noted that, despite her claims of domestic violence, petitioner had dropped the domestic violence protective order against G.B.'s father. The circuit court ordered petitioner to participate in therapy and undergo a parental fitness evaluation.

The circuit court held a review hearing in May of 2016 on petitioner's motion for an improvement period. The circuit court heard the testimony of a therapist who provided services to petitioner in 2014 and petitioner's former manager from her place of employment. However, because the report of petitioner's evaluating psychologist had been submitted less than five days prior to the hearing, it was continued to allow the parties time to review the new information. A second review hearing was held in June of 2016. At that time, the guardian expressed concerns over petitioner's continued inability to tell the truth, stating that she experienced difficulty in locating petitioner's new home. The guardian believed that she was unable to locate petitioner's new home because petitioner intentionally gave her the wrong address. The guardian explained that petitioner had been evicted from her first home in Kanawha County and then allegedly gave the guardian the incorrect address to her second home. However, petitioner testified that she gave the guardian the pre-9-1-1 address as listed on the utilities. After taking petitioner's testimony, the circuit court continued the hearing once again to allow parties time to review new evidence submitted.

3

In October of 2016, the circuit court determined that it would hear evidence on both petitioner's motion for an improvement period and the DHHR's motion to terminate petitioner's parental rights. Over the course of two dispositional hearings throughout October and December of 2016, the circuit court heard testimony from a multitude of persons, including petitioner; petitioner's evaluating psychologist; a service provider; and the child T.Y.'s therapist. Regarding the parental fitness evaluation, the record indicated that, unbeknownst to the DHHR, counsel for petitioner contacted the psychologist to arrange for the evaluation to be performed, despite it being the DHHR's responsibility to arrange the evaluation. The psychologist testified that she informed petitioner's counsel that she would not perform the evaluation because the DHHR had not paid her quickly enough in the past. The psychologist testified that she flippantly told petitioner's counsel that if he could get the DHHR to issue her a payment, that she would perform the evaluation. Coincidentally, several days later the psychologist received a substantial payment from the DHHR for her past services performed. True to her word, the psychologist performed the evaluation. Having no knowledge of what had transpired, the DHHR attempted to send the necessary documentation to the psychologist, who refused to review the information, having already performed the evaluation. The psychologist eventually reviewed one document the morning of the dispositional hearing, but testified that she had refused to review the other documentation because the DHHR frequently sent her untimely information and she did not have time to go back and review everything. The psychologist testified that having the other documentation would have been helpful, but that, having reviewed the one document that morning, her recommendation that the children immediately be returned to petitioner's custody had not changed.

The circuit court heard further evidence that after the children were removed from her custody, petitioner moved to Kanawha County in order to pursue a job, from which she had already been fired at the time of the dispositional hearing. After petitioner's move, she failed to participate fully in visitation and services. A service provider testified that petitioner missed several visits with her children, who remained in Wood County. According to testimonial evidence, both the attended and missed visits had a negative effect on the children. A DHHR worker testified that T.Y. became disturbed by petitioner's inconsistent visitation schedule and expressed that she did not know why petitioner bothered to attend visits if she could not be consistent. Further, G.B.'s father testified that when petitioner did visit, the children exhibited concerning behaviors in the days following the visit. Regarding other missed services, the circuit court heard evidence that after moving to Kanawha County, petitioner did not seek out therapy or counseling for four to five months. The circuit court also heard evidence that petitioner made several inconsistent statements regarding her living arrangements, her relationship with G.B.'s father, and her discharge from her employment. Finally, petitioner requested that T.Y., then thirteen years old, be allowed to give her opinion concerning disposition. However, T.Y.'s therapist subsequently authored a statement recommending that T.Y. not be consulted, as rendering such an opinion on whether she should return to her mother's care would be detrimental to T.Y. After hearing all the evidence, the circuit court determined that the psychologist's parental fitness evaluation was so vastly inconsistent with the evidence that its credibility was very limited. The circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and that termination was necessary for the

children's welfare. As such, the circuit court terminated petitioner's parental rights.[5] It is from this May 25, 2017, dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in not considering thirteen-year-old T.Y.'s wishes and, thus, was not in compliance with *Interest of Jessica G.*, 226 W.Va. 17, 697 S.E.2d 53 (2010). In that case, this Court held that the circuit court erred in terminating the father's parental rights when it failed to explain why the thirteen-year-old child was not of "an age of discretion" or why the wishes of the child were not considered when she expressed her desire that her father's parental rights not be terminated and when there was evidence of a strong bond. However, we find petitioner's argument to be without merit. Pursuant to West Virginia Code § 49-4-604(b)(6)(C), the circuit court "shall give consideration to the wishes of a child fourteen years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights." T.Y. was thirteen years old at the time of the dispositional hearing. While petitioner likens the situation to that of *Jessica G.*, the record is clear that the facts are quite distinguishable. First, unlike in *Jessica G.*, there is nothing in the record suggesting that T.Y. ever expressed that she did not want petitioner's parental rights terminated. Second, there was no evidence in the record that suggested T.Y. had a strong bond with petitioner. In fact, the circuit court heard evidence that T.Y. stated that she did not understand why petitioner bothered to attend visits if she could not be consistent. Finally, unlike

---

[5]J.L. is in the custody of his non-abusing father with a permanency plan to remain there. T.Y. is currently in a foster home, as her non-abusing father remains unable to care for her at this time. The permanency plan for T.Y. is to be reunified with her father if possible. The concurrent permanency plan for T.Y. is adoption by her foster family. G.B. was placed in the custody of his father after successful completion of an improvement period and dismissal of the petition. The permanency plan for G.B. is to remain with his father.

in the present case, the circuit court in *Jessica G.* expressed particular concern over the lack of any evidence or testimony of a licensed mental health care provider as to the possible psychological consequences of terminating the parental rights. In the present case, the circuit court stated that it would wait to render its decision until after a statement was submitted from T.Y.'s therapist as to whether T.Y. should be allowed to testify. Thereafter, T.Y.'s therapist submitted a statement advising against allowing T.Y. to express her opinion to the circuit court. Specifically, the therapist stated that T.Y. was under enough pressure regarding everyday stressors and managing herself. The therapist stated that T.Y.'s life should not be complicated by giving her the power to decide whether petitioner's parental rights are terminated, as she would feel guilty or responsible for whatever happened. As such, we find that the circuit court did not err in denying petitioner's request to hear T.Y.'s wishes.

Petitioner next argues that the DHHR and the guardian were biased and did not treat petitioner objectively or fairly, resulting in distorted and untrue findings. According to petitioner, several findings of fact are wholly erroneous. Specifically, petitioner asserts that the circuit court erred by finding that the evaluating psychologist attributed her payment from the DHHR to petitioner's counsel as it suggests the psychologist's report was in petitioner's favor because her counsel took steps to arrange the evaluation. Further, petitioner asserts that the circuit court's findings that (1) petitioner made additional allegations of abuse against J.L.'s father and that (2) she stipulated that there was domestic strife between herself and G.B.'s father and yet, after filing a domestic violence protective order, failed to offer evidence in support of that allegation, are misleading because they inaccurately suggest that petitioner brought unsubstantiated allegations against J.L.'s father a second time during the proceedings and failed to offer evidence to support her claims of domestic violence by G.B.'s father. We have previously held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). Here, petitioner's only argument consists of self-serving statements of how the circuit court's findings of fact portray the circumstances in the underlying proceedings differently than she remembers them. As such, we decline to disturb the circuit court's assessment of witness credibility and find that petitioner is entitled to no relief in this regard.

Petitioner next argues that none of the factors requiring termination of parental rights as set forth in West Virginia Code § 49-4-604(b)(7) are present in this case. However, petitioner misstates the law as the list of factors provided in West Virginia Code § 49-4-604(b)(7) are not requirements for termination. Rather, this section provides that if the circuit court determines certain factors are present, "the [DHHR] is not required to make reasonable efforts to preserve the family . . . ." While petitioner is correct that none of the factors in this list are present, this statute does not support her argument against termination of her parental rights. Rather, it establishes that the DHHR did have to make reasonable efforts to preserve the family in this case. There is nothing in the record that suggests that the DHHR failed to make reasonable efforts as petitioner was provided with supervised visitation, counseling, and a psychological evaluation, among other services, over the course of nearly four years.

Petitioner also argues that the circuit court erred in terminating her parental rights when less-restrictive alternatives were available. However, pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon finding that there is no

6

reasonable likelihood that the conditions of abuse and neglect could be corrected and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) sets forth that a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected includes one in which "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" We have also held that "[t]ermination . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 7, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996).

Here, it is clear that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect. The original petition was filed in 2013 due to petitioner's false allegations of abuse by J.L.'s father. Petitioner's deceitful behavior continued throughout the underlying proceedings and her second set of allegations against J.L.'s father ultimately led to the filing of the amended petition. Although petitioner subsequently withdrew the allegations, her behavior still demonstrates that she showed blatant disregard as to how her deceitful behavior caused harm to the children. Further, petitioner was ordered to participate in therapy but failed to follow through with these services after she moved to Kanawha County. The record indicates that petitioner also missed several of her supervised visits with the children and was evicted from two homes during the course of just a few months. As such, we find that the circuit court did not err in terminating petitioner's parental rights upon findings that there was no likelihood that petitioner could correct the conditions of abuse and that termination was necessary for the children's welfare.

In petitioner's remaining assignments of error she addresses in her argument, she argues that the evaluating psychologist recommended that the children be placed with her; that she was the only parent in the proceedings to seek and obtain employment; and that the May 25, 2017, dispositional order departed from the circuit court's observations on the bench. However, these arguments are either one-sentence assertions or irrelevant self-serving statements. Petitioner failed to cite to any legal authority in support of her arguments and failed to cite to the appendix record. These failures are in direct contradiction of this Court's Rules of Appellate Procedure and specific directions issued by administrative order.

Specifically, Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that

> [t]he brief must contain an argument exhibiting clearly the points of fact *and law* presented, *the standard of review applicable, and citing the authorities relied on* . . . [and] must contain appropriate and specific citations to the record on appeal[.] The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

(emphasis added). Additionally, in an Administrative Order entered December 10, 2012, *Re: Filings That Do Not Comply With the Rules of Appellate Procedure*, then-Chief Justice Menis E. Ketchum specifically noted in paragraph two that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Accordingly, this Court will not address these three assignments of error on appeal.

7

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 25, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 22, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker