**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**September 3, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **J.S., Z.S., K.S., A.S., and R.S.**

**No. 20-0085** (Ohio County 18-CJA-65, 18-CJA-66, 18-CJA-67, 18-CJA-68, and 18-CJA-69)

## MEMORANDUM DECISION

Petitioner Mother C.S., by counsel Paul J. Harris, appeals the Circuit Court of Ohio County's December 4, 2019, order terminating her parental and custodial rights to J.S., Z.S., K.S., A.S., and R.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Mark D. Panepinto, filed a response on behalf of the children in support of the circuit court's order. Petitioner filed replies to each of the responses. On appeal, petitioner argues that the circuit court erred in terminating her parental and custodial rights to the children and that the children's guardian ad litem failed to comply with his required duties.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2018, the DHHR filed an abuse and neglect petition alleging that the parents had a history of Child Protective Services ("CPS") intervention dating back to 2016, when the DHHR received a referral about physical abuse and substance abuse in the home. This referral resulted in the filing of an earlier abuse and neglect petition, during which petitioner successfully completed a preadjudicatory improvement period and was made a co-petitioner against the father. That petition was ultimately dismissed in August of 2017. However, less than one month later, petitioner contacted the DHHR to alert them to the father's renewed alcohol abuse, which resulted in the filing of a second abuse and neglect petition. Although petitioner and the father remained in a relationship, the father was not living in the home when the second petition was filed. Petitioner, however, informed the circuit court at that time that she wanted the father "to return to the home as soon as possible." That petition was ultimately dismissed as well.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

In regard to new allegations giving rise to the current petition, the DHHR alleged that it received a referral in April of 2018 that the father was again abusing alcohol and controlled substances and physically abusing the children. The DHHR further alleged that petitioner abused prescription medication and alcohol and threatened the children about speaking to CPS. Specifically, the petition alleged that petitioner admitted to taking sixty-five Klonopin in "just a few days." It was also reported that the parents sold their possessions and food stamps in order to support their drug habits. Further, J.S indicated that she was scared to call the police because "she w[ould] be hurt" if she did and then remained in the home. Upon investigating these allegations, a CPS worker asked petitioner if he could speak with the children. In response, petitioner asked the children if they wanted to speak with the worker, and they said no. During the investigation, the children's guidance counselor contacted the DHHR and stated that one of the children reported concerns about petitioner "smoking and drinking," in addition to concerns about the father being angry and hurting K.S. Later, the DHHR received another referral indicating that the parents engaged in domestic violence while under the influence of drugs and alcohol and in the presence of at least two of the children. It was alleged that the father shoved K.S. during this altercation. The petition also alleged that the father choked K.S. by putting his arm around her throat and squeezing, which was an issue that was also raised in a prior abuse and neglect proceeding. According to the petition, the father shoved petitioner down, hit her head off a wall, and would not allow her to leave the home. Five-year-old K.S. picked up her infant sibling and left the home, later confirming that she witnessed the altercation. The petition also alleged that the father admitted to several prior incidents of domestic violence in the home and was incarcerated as a result of domestic violence. In regard to petitioner, the DHHR alleged that she remained in a relationship with the father despite being aware of his history of violence and, therefore, continued to expose the children to harm. The DHHR further alleged that petitioner suffered from mental health issues that had recently deteriorated, as evidenced by her talk of suicide, referring to the children as a burden, and admitting that she could not keep the children safe. In fact, petitioner was involuntarily hospitalized prior to the petition's filing because of statements that she made to J.S.'s therapist. Because of these conditions, the DHHR alleged that petitioner abused and neglected the children. After the petition's filing, petitioner waived her preliminary hearing.

In August of 2018, the circuit court held an adjudicatory hearing, during which petitioner stipulated to allegations in the petition and was adjudicated as an abusing parent. Petitioner also moved for a post-adjudicatory improvement period. In response, the DHHR did not object to the motion, but noted that petitioner continued to test positive on her drug screens and filed for a divorce from the father. The circuit court ultimately granted petitioner a post-adjudicatory improvement period, the terms of which required petitioner, in part, to submit to drug screens to ensure that she maintained sobriety; refrain from fraternizing with known criminals, people who engage in domestic violence, or people who abuse drugs in an effort to "learn to recognize which people are inappropriate to expose her children to"; address her mental health issues by continuing her treatment and complying with the recommendations of her treating mental health professional; obtain and maintain appropriate housing; participate in adult life skills services; seek and/or maintain employment; and participate in supervised visitation with the children.

Petitioner initially did well in her improvement period such that the DHHR considered granting her overnight visitation with the children. However, the DHHR "discovered that [petitioner] hooked up with an inappropriate" individual (hereinafter referred to as petitioner's

boyfriend) who was a "career criminal" with a criminal history beginning when he was eighteen years old. As such, the DHHR subsequently decided not to expand petitioner's visits to include overnight visitation. According to a family case plan filed in January of 2019, the DHHR reiterated to petitioner that she should not fraternize with criminals or individuals with backgrounds that include domestic violence or substance abuse. Despite being aware of her boyfriend's criminal history, petitioner minimized the criminal history, failed to appreciate the concern regarding it, and did not recognize it as a violation of her improvement period or as a safety concern for the children.

During a multidisciplinary team ("MDT") meeting in January of 2019, the parties addressed petitioner's association with her boyfriend. Petitioner admitted that she was aware of her boyfriend's criminal past, but said she felt supported by him and that he had not given her a reason to be concerned. The boyfriend was invited to participate in the MDT, but he declined to discuss his past and additionally would not confirm whether he met petitioner while the two were undergoing substance abuse treatment. According to a report from the court appointed special advocate ("CASA"), petitioner "assured the MDT she would end the relationship . . . and that her kids were more important." However, two months later, petitioner confirmed that she had continued her relationship with the boyfriend. Petitioner admitted that she "knew she shouldn't have been with him and that it could jeopardize her children," but said she was lonely and felt emotional support from her boyfriend. Petitioner further admitted that she lied to her therapist about her ongoing relationship because she knew the therapist would alert the MDT or that the information would otherwise be available in her records.

In March of 2019, petitioner filed a motion to have the children transitioned back into her home in which she asserted that both the children's guardian and CASA supported the transition. The DHHR, however, opposed this motion, disputed petitioner's assertion that she had completed all the terms of her improvement period, and asked that the matter be set for disposition. Nevertheless, in May of 2019, the circuit court held a hearing and ordered the DHHR to begin transitioning the children back into petitioner's home, beginning with overnight visits. The DHHR objected to this order on the basis that petitioner lied about her continued relationship with her boyfriend, "a man with a history of criminal activity." The circuit court addressed this concern by directing petitioner not to allow her boyfriend to be around the children. Petitioner again assured the court and the parties that she had ended her relationship with this individual and that he had moved from the area. The circuit court additionally granted petitioner a post-dispositional improvement period in June of 2019.

Despite petitioner's assurances about her boyfriend, the DHHR asserted in its motion to terminate the trial reunification that on July 28, 2019, one of the children contacted 9-1-1 regarding possible domestic violence in the home. The other children were in the home at the time as well. When law enforcement responded, they found petitioner's boyfriend in the home. Petitioner and the boyfriend denied an altercation, although the boyfriend was ultimately arrested on an outstanding warrant from Virginia regarding two counts of manufacturing a controlled substance. When her boyfriend was arrested, petitioner "kissed [him] and provided her phone number so she could be updated on what happened to him." As a result of this incident, the children were again removed from the home. At a hearing in August of 2019, the circuit court found that the trial reunification with petitioner was terminated because petitioner had her boyfriend in the home

3

"after the [c]ourt told her he was not to be around the children." The court further indicated that the child called law enforcement because petitioner and her boyfriend were arguing about a vacation they were planning. Despite this evidence, petitioner informed the court that she "intends to show the [c]ourt the children were not in danger, despite what she did being wrong." It was also noted that, at an earlier hearing in July of 2019, the DHHR received a referral that petitioner had begun abusing alcohol again and "stopped drug screening without anyone telling her to."

In October of 2019, the DHHR filed an updated family case plan seeking termination of petitioner's parental rights. According to the DHHR, petitioner could not remedy the conditions of abuse and neglect in the home because of her dishonesty regarding her relationship and the fact that she put her own needs above those of her children.

In November of 2019, the circuit court held a dispositional hearing, during which it was established that petitioner's boyfriend provided law enforcement with petitioner's address as his residence when he was arrested in July of 2019. Petitioner further indicated that she was evicted from her residence shortly after his arrest. Petitioner admitted that, after her eviction, she obtained a new residence with her boyfriend and that both their names were on the lease; however, she also testified that the two broke up shortly before the hearing and the boyfriend's name had been taken off the lease. Further, petitioner admitted that she had repeatedly been dishonest with the court and the MDT about the status of her relationship with her boyfriend and that she continued to permit her boyfriend to be around the children after she was explicitly prohibited from doing so by the court in June of 2019. According to her testimony, petitioner was aware of this prohibition, "but felt she knew better." The mother of the boyfriend's child[2] testified that she ceased having any contact with the boyfriend several years ago after he threatened to bomb the hospital where their other child died soon after birth. However, this witness also said that she had recently permitted the boyfriend to have a relationship with their now teenage son and did not believe he was a threat to the child.

In a report filed on November 22, 2019, the guardian indicated that the three oldest children "believe [petitioner] essentially made a choice to reside with a person previously prohibited to be around the children and that [petitioner] basically chose that person over them." The guardian also indicated that, following the dispositional hearing, he contacted petitioner's landlord and learned that her boyfriend was still on the lease. The guardian also expressed that the three oldest children wished to return to petitioner, although they blamed her "for their current predicament."[3] Although the guardian previously supported returning the children to petitioner's care, the report indicated that he could "no longer advocate for [petitioner] since her actions speak much louder than her words."

On December 5, 2019, the circuit court entered its dispositional order. The circuit court found that petitioner's boyfriend had previously been convicted of attempted robbery, during

---

[2]Neither the boyfriend nor his child were made a part of the proceedings below.

[3]The guardian indicated that, due to their tender ages, the two youngest children were not asked to express their wishes in regard to disposition.

which "he allegedly threatened to kill the unborn fetus of the[] pregnant victim." The boyfriend was also convicted of making terroristic threats to bomb a hospital. Additionally, the circuit court found that the boyfriend had charges for possession with intent to sell heroin and methamphetamine pending in Virginia at the time of the hearing. Because of the boyfriend's past convictions for violent offenses, involvement in drug activity, and refusal to make himself available to the MDT, the court found that petitioner should not have permitted her children to be exposed to him. The court further found that his continued exposure to the children constituted a failure on petitioner's part to protect them. Based on petitioner's dishonesty, coupled with her failure to address her relationship issues, the circuit court found that petitioner was not successful in her post-dispositional improvement period. The circuit court also cited the guardian's assertion that petitioner had multiple chances to put her children first, but declined to do so. Based on the evidence, the circuit court found that petitioner was provided "a full range of services over the past several years and yet her need for male companionship has led to poor decisions that have jeopardized her ability to be reunited with her children." The circuit court further found that petitioner failed to remedy the conditions of abuse and neglect and that she demonstrated an inability to focus on her children's needs before her own. As such, the court found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future and that the children's best interests required termination of her parental and custodial rights. Accordingly, the circuit court terminated petitioner's parental and custodial rights to the children.[4] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental and custodial rights for several reasons. Confusingly, petitioner first asserts that the circuit court could not terminate her rights because termination may only occur when it is found that the children are abused and neglected. According to petitioner, none of the definitions of abused or neglected child

---

[4]The father's parental and custodial rights were also terminated below. According to the DHHR, the permanency plan for the children is adoption together in a foster home.

5

apply to any of the children herein. However, petitioner ignores the fact that she stipulated at adjudication to allegations in the petition and, accordingly, was adjudicated as an abusive and neglectful parent. As such, petitioner has waived her right to challenge adjudication on appeal and any argument that she did not abuse or neglect the children will not be addressed. *See Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) ("'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999).").

Petitioner next argues that the circuit court erred in terminating her parental and custodial rights upon her continued association with her boyfriend because the petition in this matter did not contain any allegations regarding the boyfriend. Without belaboring petitioner's detailed argument in this regard, it is sufficient to say that the DHHR was not required to amend the petition in this matter to specifically reference petitioner's boyfriend because the petition sufficiently alleged that petitioner failed to protect the children. It is true that the petition based this allegation on petitioner's repeated exposure of the children to their father, who abused substances and engaged in domestic violence in the home. However, it is clear that petitioner's exposure of the children to her boyfriend, an individual with a criminal history that included violent crimes and who was arrested on an outstanding warrant while in the home with the children, constitutes evidence of additional conduct on petitioner's part, not a new allegation against her. This Court has been clear that "facts developed after the filing of the petition, or amended petition, may be considered in evaluating the conditions which existed at the time of the filing of the petition or amended petition." *In re Brandon Lee B.*, 211 W. Va. 587, 590, 567 S.E.2d 597, 600 (2001). The petition in this matter alleged that petitioner exposed her children to an inappropriate, violent individual—the father—and the evidence introduced regarding petitioner's relationship with her boyfriend established that she continued to expose the children to individuals that posed a risk of harm to the children. As such, it is clear that the evidence regarding petitioner's relationship with her boyfriend clearly related to the conditions of abuse and neglect that existed at the time of the petition's filing, and any argument on appeal that the DHHR was required to amend the petition to include specific reference to the boyfriend or that the circuit court was precluded from basing termination on this evidence does not entitle petitioner to relief.

Petitioner next alleges that there was no evidence of violence in the home between her and the boyfriend. According to petitioner, when law enforcement responded to the home upon one child calling 9-1-1 to report possible domestic violence, the officers determined that no violence had taken place and, instead, arrested the boyfriend due to an outstanding warrant on unrelated charges. Simply put, the fact that petitioner's boyfriend did not engage in domestic violence in the home is not dispositive of whether he presented a threat to the children, as the circuit court found. It is undisputed that petitioner's boyfriend has been convicted of violent crimes, including threatening to blow up a hospital and attempted robbery. Further, the evidence established that the boyfriend had an outstanding warrant for drug crimes. Given petitioner's failure to protect the children from potentially dangerous individuals and her failure to address her relationship issues during the proceedings, including her dishonesty with her therapist about her ongoing relationship with the boyfriend, we find no error in the circuit court's finding that the boyfriend presented a risk of harm to the children that petitioner was not equipped to protect them from. While petitioner argues that her boyfriend was never adjudicated as an inappropriate person, we note that the circuit

court was under no obligation to subject the boyfriend to an adjudicatory determination because he was not a named respondent in the proceedings.[5] In support of this assignment of error, petitioner also attempts to justify her continued association with the boyfriend after it was repeatedly prohibited by asserting that the DHHR at first supported returning the children to petitioner's care despite being aware of her relationship with the boyfriend. This argument is simply disingenuous, as it ignores the fact that the DHHR's understanding of the threat the boyfriend posed to the children evolved throughout the proceedings. What is clear from the record is that once the DHHR identified the danger the boyfriend posed, it repeatedly informed petitioner that he was not to be in the children's presence. As such, petitioner is entitled to no relief in regard to this argument.

Petitioner next argues that "there was no written order at the time the purported violation occurred." This argument is flawed for two reasons. First, petitioner attempts to limit her problematic conduct in regard to the boyfriend to the single incident in which law enforcement responded to the home and arrested her boyfriend. While it is true that this was the incident that resulted in the children's second removal from the home during the case, petitioner violated the prohibition against continuing her relationship with the boyfriend on many occasions and, in fact, admitted that she lied to her therapist, the MDT, and the circuit court about her repeated interactions with him. As such, we reject petitioner's position that she committed only one violation of the prohibition against her continued relationship. Second, petitioner's attempt to absolve herself of responsibility for complying with this prohibition, as expressed by both the MDT and the circuit court, by asserting that a circuit court speaks only through its orders is unavailing. Petitioner is correct that we have routinely held that "[i]t is a paramount principle of jurisprudence that a court speaks only through its orders." *Legg v. Felinton*, 219 W. Va. 478, 483, 637 S.E.2d 576, 581 (2006) (citation omitted). What petitioner ignores, however, is that the prohibition against her exposing the children to her boyfriend first appeared in a family case plan filed with the court in January of 2019—six months before the incident involving her boyfriend that resulted in the second removal of the children from her home. In that case plan, the DHHR plainly described her relationship as a violation of her improvement period. As this Court has held,

> "[t]he purpose of the family case plan as set out in W.Va. Code [§ 49-4-408(a)], is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems." Syl. Pt. 5, *State ex rel. Dep't of Human Services v. Cheryl M.*, 177 W.Va. 688, 356 S.E.2d 181 (1987).

---

[5]In the order on appeal, the circuit court specifically found that it would not label the boyfriend an "inappropriate person." This decision was made only because that term "is not clearly defined by statutory or case law in West Virginia." According to the circuit court, the DHHR "frequently unilaterally utilize[s]" this term, but the court was clear that it made no such legal conclusion or finding in regard to this term. That said, the circuit court was unequivocal in its determination that the boyfriend posed a threat of harm to the children and that petitioner's failure to acknowledge this threat constituted a continued failure to protect them. Accordingly, any argument on appeal that petitioner bases upon the circuit court's refusal to label the boyfriend an "inappropriate person" does not entitle her to relief.

Syl. Pt. 2, *In re Desarae M.*, 214 W. Va. 657, 591 S.E.2d 215 (2003). By including this information in the case plan, the DHHR alerted petitioner to the steps she needed to take in order to remedy the conditions of abuse and neglect at issue. Despite this information, petitioner continued her relationship with her boyfriend and repeatedly lied to the MDT and the court about the relationship all the way through the dispositional hearing. Further, even after the circuit court entered an order expressly prohibiting her from continuing the relationship, petitioner not only refused to comply but then signed a lease on an apartment with her boyfriend. In short, the record is clear that petitioner was properly notified multiple times about the prohibition regarding her boyfriend and yet she chose to willfully disregard this direction and actively conceal it from her therapist, the MDT, and the court. As such, she is entitled to no relief in this regard. Additionally, any assertion that the DHHR failed to satisfy its burden with regard to the termination of her parental and custodial rights based on any of the arguments set forth above must fail.

Petitioner next argues that termination was inappropriate because she completed all the terms and conditions of her improvement period and because none of the examples of there being no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected as set forth in West Virginia Code § 49-4-604(d)(3) apply to her conduct. Petitioner's assertions, however, ignore the fact that her dishonesty with the MDT and her therapist rendered her participation in services futile. As the circuit court found at disposition, petitioner's dishonesty with her therapist resulted in her inability to address her relationship issues through therapy. In essence, petitioner's refusal to accept the danger posed by her boyfriend constituted a failure to acknowledge the conditions of abuse and neglect at issue. As this Court has held,

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). The record shows that petitioner has historically made poor decisions by allowing potentially harmful individuals continued access to the children. At first, it was the children's father, who petitioner continually expressed a desire to remain with despite the fact that he choked one of the children on multiple occasions and continued to abuse drugs and alcohol. Indeed, the DHHR indicated that after filing the prior petition against the father when he was not living in the home, petitioner expressed a desire for the father to return to the home as quickly as possible. While petitioner did eventually divorce the father, the fact remains that she almost immediately initiated a relationship with another individual who displayed violent tendencies. On appeal, petitioner argues at length that her boyfriend never actually harmed the children and that there was no evidence he was violent toward the children. This argument, however, ignores the reality that petitioner has a lengthy history of failing to protect the children from violent individuals and, that by initiating a relationship with her boyfriend, she created a continued possibility of harm to the children. Given petitioner's refusal to acknowledge this danger, it is clear that she could not correct it.

Further, petitioner erroneously asserts that the evidence did not establish that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect in

the near future. As set forth in West Virginia Code § 49-4-604(d)(3), a circumstance in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes when

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Here, the circuit court found that there was no reasonable likelihood petitioner could correct the conditions of abuse and neglect due, in large part, to her failure to comply with the case plan and its direct order prohibiting contact with the boyfriend. This is in keeping with the statute cited above. While petitioner argues that this finding was in error, it is clear that it was based on substantial evidence of her willful refusal to comply with direct orders and her repeated dishonesty about her conduct. As such, we find no error in the circuit court's termination of petitioner's parental and custodial rights upon this finding.

Further, to the extent that the record reflects petitioner's compliance with other terms and conditions of her improvement periods and case plan, we note that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). While petitioner's participation in other aspects of the case is commendable, we agree with the circuit court that the children's best interests required termination of petitioner's rights because of her refusal to honestly address the danger her boyfriend posed. In support of this assignment of error, petitioner asserts that her dishonesty with the court about this relationship should have resulted in a contempt proceeding against her for failure to follow the court's orders, instead of the termination of her parental and custodial rights. This assertion, however, is unsupported by citation to any authority and simply does not follow, logically. The circuit court's direction to cease her relationship with her boyfriend was tied directly to the DHHR's inclusion of this prohibition in the case plan designed to remedy the conditions of abuse and neglect at issue. That petitioner failed to comply was directly relevant to her inability to correct the conditions of abuse and neglect and properly formed the basis of the circuit court's decision to terminate her parental and custodial rights. As such, we find no error.

Next, petitioner alleges that the circuit court erred in terminating her rights because the DHHR failed to produce evidence from a qualified medical professional that it was in the children's best interests to terminate her parental and custodial rights. In support of this assignment of error, petitioner cites to cases dealing with West Virginia Code § 49-4-604(c)(6)(C), which requires that "the court shall give consideration to the wishes of a child 14 years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights." The record shows, however, that the oldest child in this matter was only twelve at the time of the dispositional hearing, and the circuit court did not find that any of the children were otherwise of an age of discretion such that it was required to consider their wishes. As such,

9

petitioner's reliance on case law, specifically *In re Jessica G.*, 226 W. Va. 17, 697 S.E.2d 53 (2010), is misplaced.

In that case, the Court indicated that it was "particularly concerned with the complete absence of any testimony at the dispositional hearing by a licensed mental health care provider as to the possible psychological consequences to Jessica G. by terminating her father's parental rights." *Id*. at 22, 697 S.E.2d at 58. Petitioner relies on this dicta to seemingly assert that testimony from such a health care provider is necessary in all cases, which is simply not accurate. In *Jessica G.*, there was extensive evidence about the child's strong emotional bond with the father. Additionally, the child in that matter was thirteen years old at the time of disposition and fourteen years old by the time this Court remanded the proceedings for additional evidence regarding the impact of termination on the child. Here, as set forth above, the oldest child was only twelve at the time of disposition and petitioner cites to no evidence in the record that would establish that any of the children were otherwise of an age of discretion such that their wishes must have been considered. Moreover, while the child's guardian in *Jessica G.* supported the parent's appeal, she did "not argue that Jessica G. should be returned to the custody of the Appellant as a result of th[at] appeal." *Id*. at 21, 697 S.E.2d at 57. In granting the parent relief in that case, the Court agreed with the guardian's position and specifically remanded the matter solely for the circuit court to consider the child's wishes and make a determination as to an alternative disposition, while expressly directing that "[n]othing in this Opinion should be interpreted to require the transfer of the custody of Jessica G. from the DHHR to the Appellant." *Id*. at 22 n.7, 697 S.E.2d at 59 n.7. Contrary to the direction of *Jessica G.*, petitioner argues that the circuit court's alleged failure to require the testimony of a licensed health care professional requires that "the case must be reversed and remanded for the restoration of [her] parental rights." This is simply an inappropriate outcome, even if the Court were inclined to recognize error, which we do not. While petitioner cites to evidence that the children expressed a desire to be returned to her custody, the fact remains that petitioner's conduct in failing to remedy the conditions of abuse and neglect that jeopardized their wellbeing required termination of her parental and custodial rights.

In support of this assignment of error, petitioner further asserts that the children's placement in multiple foster homes during the proceedings constitutes error because separating the siblings was not in their best interests. Again, however, petitioner presents this argument as one that requires the return of the children to her care. Without addressing the specifics of the children's placements, we find that such an argument entitles petitioner to no relief. Simply put, the DHHR's inability to locate a foster home willing to accommodate five children cannot be grounds for returning the children to petitioner's care when she has failed to correct the issues of abuse and neglect that necessitated their removal. Petitioner's argument in this regard is untenable, as accepting such a position would allow parents to regain custody of children without remedying conditions of abuse and neglect due to a difficulty in obtaining ideal foster care. As such, she is entitled to no relief in this regard.

Finally, petitioner argues that the guardian failed to conduct an adequate investigation into the case, inform the circuit court of the children's wishes to remain with her, inform the court whether being separated was in the children's best interests, and failed to provide the court with a recommendation for the children. In support of this assignment of error, petitioner asserts additional arguments related to the children's placements while out of her custody which, as

addressed above, simply do not entitle her to the children's return. As set forth in the analysis regarding the preceding assignment of error, petitioner's assertions that the children's placement in foster care is contrary to their best interests does not entitle her to relief and the same holds true with regard to her assertion that the guardian was required to address whether separation was in the children's best interests. Regardless of whether the guardian failed to express an opinion on this issue, such a failure would not require restoration of petitioner's parental and custodial rights. Similarly, the guardian's alleged failure to express a recommendation as to what disposition the court should have imposed for the children would not entitle petitioner to their return to her custody. Further, petitioner asserts that the circuit court did not know the oldest child's wishes at disposition, but ignores the guardian's report filed with the court below. That report contained a section entitled "Children's Expressed Wishes" that set forth, with respect to the three oldest children, their stated desire to return to petitioner's home. As such, the record simply does not support petitioner's position that the guardian failed with regard to the duty to make the children's wishes known.[6]

Petitioner also takes issue with the circuit court's findings of fact with regard to termination by asserting that the court failed to make findings as to whether the DHHR made reasonable efforts to return the child to petitioner's care or that reunification was not in the child's best interests. This complaint is unsupported by the record, as the circuit court's seventeen-page dispositional order contains detailed findings of fact, including extensive findings regarding the circumstances that prevented the return of the children to the home. Further, the evidence is clear that the DHHR provided petitioner with extensive services throughout the proceedings and any argument that the circuit court's order failed to set forth those services with particularity does not entitle petitioner to relief. Indeed, we have held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001).

---

[6]Petitioner also points to two letters the oldest child wrote to the circuit court following the termination of her parental rights in which the child expressed a desire to return to petitioner's care to argue that the guardian has a duty to file a motion for reconsideration. However, "[w]e repeatedly have emphasized that the West Virginia Rules of Civil Procedure do not recognize a 'motion for reconsideration.'" *Savage v. Booth*, 196 W. Va. 65, 68, 468 S.E.2d 321, 318 (1996). It appears, instead, that petitioner is arguing that the guardian has a duty to file a motion to modify the dispositional order under West Virginia Code § 49-4-606(a). We note, however, that modification is only appropriate when "the court finds by clear and convincing evidence a material change of circumstances." Given that the letters to which petitioner cites simply reinforce the oldest child's wish to be returned to petitioner's care and this information was conveyed to the court prior to the termination of parental rights, there is simply nothing that constitutes a substantial change in circumstances that would require the guardian to file such a motion.

Syl. Pt. 3, *In re Emily G.*, 224 W. Va. 390, 686 S.E.2d 41 (2009). None of the issues of which petitioner complains constitute a substantial disregard or frustration of the applicable rules and statutes such that vacation of the dispositional order is warranted. This is especially true in light of the fact that we find no error in the termination of petitioner's parental and custodial rights.

According to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate parental and custodial rights upon finding that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future and that termination is necessary for the children's welfare. As addressed above, the circuit court had substantial evidence upon which to base its finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect. While petitioner argues that the circuit court failed to make findings with regard to termination being in the children's best interests, the record shows that there are ample findings in the dispositional order in this regard. Specifically, the circuit court found that termination was necessary for the children's welfare in light of petitioner's failure to correct the conditions of abuse and neglect at issue after she was provided "a full range of services over the past several years." In further support of this finding, the circuit court noted that petitioner's "need for male companionship has led to poor decisions" and that she failed to protect the children. Accordingly, it is clear that the circuit court had sufficient evidence upon which to base the findings necessary for termination of petitioner's parental and custodial rights. Moreover, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given the analysis above, we find no error in the termination of petitioner's parental and custodial rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 4, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: September 3, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison